Buvnton, J.
This is an application for a peremptory writ of mandamus, an alternative writ having been allowed, commanding the defendants to accept the bid of the relators, and to award to them the contract for supplying the materials for, and completing the east and wrought-iron work which is to enter into the construction of a new court-house to be erected in Shelby county. It appeai-s from the petition of the relators that the defendants duly advertised for separate and distinct sealed jiroposals for furnishing materials and performing the labor for each separate and distinct trade, or kind of mechanical labor, or employment, necessary to fully complete the construction, and that among the specifications of the various kinds of material and labor for which distinct proposals were invited, was one for “ cast and wrought-iron work.” The architect’s estimate of the cost of the work was $34,600. Upon opening the bids, on the day named, which was November 9, 1880, it was found that the Columbus Bridge and Iron Works proposed to supply the materials and do the work for $23,900, and the relators for $32,800. These were the only bids for this branch of the work. The commissioners accepted the former bid, and entered on their journal an order awarding the contract to the Columbus Bridge and Iron Works as the lowest bidder, but as the company failed to enter into the contract and execute the required bond, the relators, on learning the fact, tendered a good and sufficient bond, and demanded of the *328 commissioners the awarding of the contract to them as the next lowest bidder. This the commissioners refused to do, but re-advertised for further proposals for this specific class of work. To the writ containing a copy of the petition, which stated, among other things, the foregoing facts, the defendants demur. It is contended, in support of the demurrer, that the facts stated in the petition for the writ disclose a clear discretion in the defendants to accept or reject the bid of the relators, as they may deem its acceptance or rejection most conducive to the interest of the public. This the relators deny, contending that upon the refusal or failure of the Columbus Company to complete their contract and give the requisite bond, that they, as the next lowest bidders, having tendered a good and sufficient bond, were entitled to the contract as matter of statutory right. In this view of the relators we do not concur.
By the fourth section of the act of March 3, 1831, to provide for the erection of public buildings (2 S. & C. 1228), whenever the commissioners of a county determined to erect a court-house or jail, they were authorized either 'to receive sealed proposals for the performance of the whole or any part of the labor, or for furnishing materials, or “ to sell the same ” at public auction to the lowest bidder; and the person making the best proposals, or the lowest bid, in case the work was sold at auction, was entitled to the contract, if, in the opinion of the commissioners, he was a proper person to undertake such work. By the act of April 27, 1869 (66 O. L. 52), this section was repealed, and more extended provisions were enacted, relating not only to the erection of public buildings, but embracing the construction of county bridges. This act made it the duty of the commissioners to cause plans and specifications to be made and deposited with the county auditor, showing all the parts and the necessary details of the work, and required the auditor to advertise for sealed proposals for supplying the materials and performing the labor necessary to complete the erection. When this was done, and the proposals were received, it was made the duty of the commissioners to award the contract to the person who offered to perform the labor and furnish the materials at the lowest price, and who gave a *329 good and sufficient bond to the acceptance of the commissioners, for the faithful performance of the contract.- It was under this act that Boren v. The Commissioners of Darke County, and Farman v. The Same Defendant, 21 Ohio St. 311, arose, and were decided. Subsequently, the legislature passed the act of May 5, 1877 (74 O. L. 186). This act required the commissioners or other public officers charged with the letting of the contract, to award the same to the lowest and best separate bidder, and in terms repealed all laws and parts of laws then in force, inconsistent with its provisious. § 2.
This act, together with that part of the act of 1869, re •quiring the commissioners to award the contract to • the person proposing to furnish the materials and perform the labor at the lowest price, upon his giving, a good and sufficient bond, was carried into the revised statutes (§§ 794, 799); and it was under these sections that the action of the commissioners, which is now complained of, was had. There seems, to some •extent at least, to be a want of harmony between these two ■sections,, as respects the duty of the commissioners in selecting the person to whom to award the contract. The former section requires the commissioners to award the contract to the lowest and best bidder, while the latter requires the contract to be awarded to the person offering to perform the labor and furnish the materials at the lowest price.
Without stopping to inquire whether the commissioners would be bound by section 799 to award the contract to the •lowest bidder, if in their judgment the public interest required his bid to be rejected and new proposals to be invited, «it is very clear that section 794, both in the terms it employs and in the purpose manifested by its language, confers upon the •commissioners discretionary power.
By its provisions they are required to determine, not merely who offers to do the work and furnish the materials at the lowest price, but who is the best and lowest bidder. As the law stood before the revision, there can be no doubt, under well-settled rules of construction, that, in so far as the act of 1869 was in its effect and operation at variance with the act of 1877, it must yield to the operation of the latter.. The latest *330 expression of legislative will must govern. And upon rules of construction equally well settled, the two acts as incorporated into the revised statutes have the same effect, and must receive the same interpretation as they received before the revision took place. The court is only warranted in holding the construction of a statute which has undergone revision, to. be changed, when the intent of the legislature to make such change is clear1, or the language used in the new act plainly requires such change of construction to be made.
Neither an alteration in phraseology nor the omission or-ad dition of words in the latter statute necessarily require a¡. change of. construction. Conger v. Barker, 11 Ohio St. 1; Sedgw. on Stat. and Const. Law, 299, 365 ; Williams v. The State, 35 Ohio St. 175. The intent to give to the new act a different effect from the old, should be clearly manifested. Here, there was no substantial change in phraseology of the two acts, and certainly none in meaning and effect. The same construction, therefore, must 'now prevail as befpre the two acts were 'revised, and this requires us to. hold, that in so far as the two sections cannot be harmonized, effect must be given to section 79é. The two provisions being in pari materia, must be read together, and in view of the construction previously required. It is not however improper to-remark, that in thus holding, we do not wish to be understood as implying that the commissioners under the act of 1869, were not authorized to re-advertise for further proposals, where, for any valid reason, the contract was not made with the person offering to do the work and furnish the materials at the lowest, price, or that they were bound at alL events to let the contract, to him; nor do the cases from Darke county, svpra, so decide. The principle of those cases is, that the commissioners,, having determined not to re-advertise for further proposals» were bound to award the contract to the bidder offering to do. the work and furnish the materials at the .next lowest price,, where the lowest bidder failed to comply with the statute by entering into the contract and executing the requisite bond» This is the extent to which the court went.
If the commissioners were required, at all events, to award *331 the contract to the one offering to perform the labor and to-furnish the materials at the lowest price, to determine ydiich. would be a mere matter of figures, it would not be difficult for bidders to so combine, as to secure the work at the full estimate-of the architect. The statute was enacted for the benefit of the-public, and not for individual bidders, and it should be executed with sole reference to the public interest.
Mandamus will lie only where there is a plain dereliction of duty upon the part of public officers, and can never be invoked to control discretion which is being exercised in good faith,, and with a sole view to the public welfare. Exp. Black, 1 Ohio St. 30.

Peremptory writ refused.